Robert L. Furst
Peter B. Dolan
Eirik J. Cheverud
Marc Sarata
Office of the Solicitor
U. S. Department of Labor
P.O. Box 1914
Washington, D.C.  20013
Tel:  (202) 693-5612

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

EDWARD C. HUGLER, Acting
Secretary of Labor, United States
Department of Labor,

               Plaintiff

           v.

JAMES DEWALT;
ROBERT G. BAKIE;
JACK L. FALLIS; JR.;
JEFFREY A. BARTON;
ASSOCIATED INDUSTRIES
MANAGEMENT SERVICES, INC.;
THE ASSOCIATED INDUSTRIES OF
THE INLAND NORTHWEST; AND
THE ASSOCIATED EMPLOYERS
HEALTH AND WELFARE TRUST,

               Defendants.

Civil Action No. _____

COMPLAINT

Filed by Edward C. Hugler,
Acting Secretary of Labor
United States Dept. of Labor

## **COMPLAINT FOR ERISA VIOLATIONS**

Complaint - 1

Edward C. Hugler, Acting Secretary of Labor, United States Department of Labor (the "Secretary"), alleges as follows:

## **INTRODUCTION**

1.      The Secretary brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq., to remedy breaches of Defendants' ERISA fiduciary duties committed in the course of their management of the Associated Employers Health and Welfare Trust ("AET" or the "Trust") and the ERISA-covered employee benefit plans that participate in the Trust.  Approximately three hundred small employers and their employees contributed to the Trust to fund their employee health and welfare benefit plans (the "Plans") and pay administrative costs for the Plans.  AET's trustees (the "Trustees") received those contributions, which were held in trust for the Plans, and spent those funds to purchase insurance and pay administrative costs for the Plans.

2.      Defendant Trustees caused the Trust to retain and pay ever-increasing administrative fee rates to a related, for-profit corporation, Defendant Associated Industries Management Services, Inc. ("AIMS"), for administrative services for the Plans.  Two of the Trustees were officers and employees of AIMS—Defendant James DeWalt was the President, CEO, and a director of AIMS and Defendant Bakie was AIMS's CFO.  As a result of Defendants' actions, the Trust paid AIMS

Complaint - 2

millions of dollars of additional fees, which were largely taken from financial reserves held by the Trust, without disclosing to the employers or employees that AIMS's fees had been increased or that money to pay for the increased fees was being taken out the Trust's reserve funds. The Trustees' conduct constituted prohibited self-dealing with the Plans' assets and violated their ERISA fiduciary duties of loyalty, prudence, and fidelity to the participants and beneficiaries of the Plans.

3. Despite Defendants DeWalt's and Bakie's conflict of interest, the Defendant Trustees repeatedly paid and increased AIMS's fee rates without: researching other firms' fee rates, seeking competing bids, seeking a consultant's evaluation of the reasonableness of the increased fees for AIMS's services, or taking any efforts to determine if AIMS's services could have been provided by another firm for less. Instead, the Trustees increased AIMS's fee rates even as the Trust saw a sharp decrease in the number of employers and participants serviced by AIMS.

4. At all times relevant to this action, AIMS's fees were calculated as a percentage of the insurance premiums paid through the Trust. When the number of participating employers ("Participating Employers") in the Trust fell, the total insurance premiums paid through the Trust fell as well. In response, the Trustees raised AIMS's fee percentage (on Trust-paid premiums) from 2.0% to 3.5%, then

Complaint - 3

from 3.5% to 4.0% (applied retroactively), and then from 4.0% to 7.0 percent (applied retroactively). The Trustees did so for the purpose of maintaining or increasing Defendant AIMS's total revenue from the Plans, which supported AIMS's payment of DeWalt's and Bakie's salaries. The Trustees did this in the face of the falling total premiums and despite the fact that AIMS was providing services to fewer Plans and fewer participants.

5. The Secretary also brings this action against Defendant Associated Industries of the Inland Northwest (the "Association"), which established the Trust. Defendant Trustee DeWalt was the President and CEO of the Association as well as the President and CEO of AIMS, which was wholly owned by the Association. The Association appointed Defendants DeWalt and Barton to be Trustees and had authority to remove the Trustees. Accordingly, the Association had an ERISA fiduciary duty to loyally and prudently monitor the Trustees' performance. The Secretary alleges that the Association violated that duty and thereby enabled the Trustees to breach their fiduciary duties. Further, because AIMS knowingly participated in the Trustees' fiduciary breaches, the Secretary also brings this action to hold Defendant AIMS liable under ERISA and for disgorgement, to the Trust, of the fees that AIMS received as a result of those fiduciary breaches.

6. To remedy these alleged ERISA violations, the Secretary seeks a judgment requiring the Defendant Trustees and the Defendant Association to

Complaint - 4

restore the Plans' losses resulting from their breaches of fiduciary duty.  The

Secretary seeks an injunction to bar the Defendant Trustees from acting as

fiduciaries to ERISA-covered plans.  Plaintiff Secretary also seeks appointment of

an independent fiduciary to hire and determine the compensation for the Trust's

service providers, and an accounting of the Trust's assets.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to

ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).

8.    Venue is proper in this Court pursuant to ERISA section 502(e)(2), 29

U.S.C. § 1132(e)(2).

## PARTIES

9.    The Secretary, pursuant to ERISA section 502(a)(2) and (5), 29

U.S.C. § 1132(a)(2) and (5), has authority to enforce the provisions of Title I of

ERISA by filing and prosecuting claims against persons who violate the provisions

of ERISA and the regulations promulgated thereunder and against persons who

knowingly participate in those violations.

10.    Defendant James DeWalt is a natural person residing in Spokane,

Washington.  At all relevant times, DeWalt was a Trustee of the Trust; the

President and CEO of the Association; and the President, CEO, and a director of

AIMS.

Complaint - 5

11.    Defendant Robert G. Bakie is a natural person residing in Spokane, Washington.  At all relevant times prior to March 2013, Bakie was a Trustee of the Trust and the CFO of AIMS.

12.    Defendant Jack L. Fallis, Jr. is a natural person residing in Spokane, Washington.  At all relevant times, Fallis was a Trustee of the Trust.

13.    Defendant Jeffrey A. Barton is a natural person residing in Spokane, Washington.  At all relevant times, Barton was a Trustee of the Trust.

14.    Defendant Associated Industries of the Inland Northwest (the "Association") is a non-profit corporation, organized under the laws of the State of Washington, with its principal place of business located at 1206 North Lincoln Street, Suite 200, Spokane, Washington.  The Association is the sole owner of AIMS.

15.    Defendant Associated Industries Management Services, Inc. ("AIMS") is a for-profit corporation, organized under the laws of the State of Washington, with its principal place of business located at 1206 North Lincoln Street, Suite 200, Spokane, Washington.  At all relevant times, AIMS provided administrative services for the Plans, received payment for its services from the Trust, and was wholly owned by the Association.

16.    Defendant Associated Employers Health and Welfare Trust ("AET" or the "Trust") is a trust established by the Association.  The Trust received employer

Complaint - 6

and any employee contributions, held those funds in trust, and used those funds to pay insurance premiums and administrative services for the Plans.  Under Fed. R .Civ. P. 19(a)(1)(A), plaintiff Secretary joins the Trust as a party solely to permit the Court to order complete relief in this action.

17.     Each of the foregoing parties, except the Trust, have signed an agreement in which each Defendant waived any defenses based on the statute of limitations contained in ERISA section 413, 29 U.S.C. § 1113, and any other timeliness defense for the period beginning May 27, 2016, and running through and including February 28, 2017, and in which each party agreed to toll the running of that statute of limitations or any other timeliness defense during that period.  In addition, as described below, by concealing the increases in AIMS's fees and by taking money from the Trust's reserves to pay for those increases, without telling the Participating Employers or their employees that it was doing so, the Defendants engaged in fraud or concealment under ERISA section 413, 29 U.S.C. § 1113, which states, in pertinent part:  "[I]n the case of fraud or concealment, [an ERISA breach of fiduciary duty] action  may be commenced not later than six years after the date of discovery of such breach or violation."

Complaint - 7

## GENERAL ALLEGATIONS

### The Association, Participating Employers, and the Trust

18.    The Association is a non-profit corporation with approximately three hundred dues-paying employer members.  The Association represents itself as providing various services to its employer members, including employee healthcare benefits administration services.  In order to become a Participating Employer in the Trust, an employer must be an employer member of the Association and be accepted by the Trustees.

19.    The Participating Employers provided medical and other health and welfare benefits to their employees through the Plans.  Those benefits were insured by insurance policies purchased by the Participating Employers.  Under the terms of these insurance policies and through procedures adopted by these Participating Employers, the employees submitted claims for the insured benefits to the insurers and received payments on allowed claims.

20.    Each year, each Participating Employer signed an application for premium rates and other terms of the insurance policies for the employee benefits to be offered by that Participating Employer for the coming year.  The insurer's acceptance of the Participating Employer's application for those terms created the insurance policy for those employee benefits.  By signing the application, the

Complaint - 8

Participating Employer expressly adopted the document that governed the Trust (the "Trust Agreement").

21.    Through the actions in paragraphs 19 and 20 above, each Participating Employer established or maintained an employee welfare benefit plan as defined in ERISA section 3(1), 29 U.S.C. § 1002(1), which was also an employee benefit plan as defined in ERISA section 3(3), 29 U.S.C. § 1002(3).  Each plan is covered by ERISA pursuant to ERISA section 4(a), 29 U.S.C. § 1003(a).  This complaint refers to all of these plans collectively as the "Plans."  Collectively, the Plans were a "multiple employer welfare arrangement" ("MEWA") as ERISA section 3(40), 29 U.S.C. § 1002(40), defines that term.

22.    The Trust Agreement defined "employee welfare benefit plan" as any lawful employee benefit plan created and administered by the Trustees.  Trust Agreement Art. II § 3.  The Trust Agreement identified the Association as the "Plan Sponsor" for certain employee welfare benefit plans administered by the Trust.  Id. at Art. III § 3.  The Trust further identified itself, or the Plans administered through the Trust, as the ERISA-covered "employee benefit welfare plans" for the Participating Employers' employees and their beneficiaries.  Id. at Art. VII § 3.  Accordingly, the Secretary also pleads, in the alternative, that the Trust or the employee welfare benefit Plans it says it administered were the ERISA-covered plan or plans of employer members.

Complaint - 9

## **Trust Governance and the Trustees**

23.    The Trust Agreement provided that the Trust was to be administered by a six-member Board of Trustees.  Id. at Art. III § 1.  The Trust Agreement identified the Trustees as "named fiduciaries," "fiduciaries," and "plan administrator" as those terms are used in ERISA.  Id. at Art. III § 2.

24.    The Trust Agreement prohibited any action by the Trustees at a meeting without a quorum of at least four (4) trustees.  Id. at Art. IV §§ 1-2.  The Trust Agreement also provided that "[n]o vacancy in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust so long as a quorum exists . . . ."  Id. at Art. III § 15.  Actions taken without a meeting required unanimous approval of the Trustees, with no fewer Trustees than required to form a quorum.  Id. at Art. IV § 7.

25.    The Trust Agreement provided that "at least two (2) of the Trustees [of the six-member Board of Trustees] shall be appointed by the Association."  Id. § III.1.  It also provided that the appointment of a Trustee could be terminated at any time by the Association.  Id. § III.10.  Because the Association had and exercised discretionary authority to appoint and remove Trustees of the Trust, the Association was a fiduciary of the Plans as defined in ERISA section 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), to the extent of its powers of

Complaint - 10

appointment and removal, and a party in interest as defined in ERISA section 3(14)(A), 29 U.S.C. § 1002(14)(A).

## Trust Contributions and Use

26.    The Association established the Trust to receive financial contributions from the Participating Employers and their employees to pay for the employee benefits.

27.    The Trustees' powers included the power of "expenditure of Trust monies . . . necessary to carry out the purpose of this Trust Agreement."  Trust Agreement at Art. VII § 1.  The Trust Agreement also authorized the Trustees "to retain, at the expense of the Trust, . . . professional and non-professional help, as they may deem necessary in the administration of the Trust Fund and the benefit plans," id. at Art. VII § 11, including administrative agents to assist the Trustees in the day-to-day administration of the Trust, id. at Art. VII § 9.

28.    The Trust Agreement provided that the contributions of Participating Employers and employees to the Trust shall be the amounts determined by the Trustees to be required for the payment of benefits and the reasonable expenses of administering the Plans.  Id. at Art. II § 4.  The Trust Agreement granted the Trustees authority to receive contributions to establish and maintain a reasonable reserve for future contingencies in the Trust Fund and the benefit plans.  Id. at Art. VIII § 1.  The Trust Agreement provided for three types of contributions from

Complaint - 11

Participating Employers:  (a) an initial contribution in the amount determined by the Trustees in accordance with the insurance coverage to be provided; (b) additional monthly contributions in such amounts as the Trustees from time to time determine, and (c) "such further contributions as may be requested from time to time by the Trustees in order to maintain a reserve for each Participating Employer not to exceed the cost of two (2) months coverage for the participating employees of such employer." Id.

### Trustees

29.     The Association appointed DeWalt as a Trustee in 2004.  DeWalt has been a Trustee at all times from 2004 to the present.  Continuously from 2004 through the present, DeWalt has been the Association's President and CEO, in addition to being the President and CEO of AIMS.

30.     Bakie was a Trustee from 1989 through March 2013.  During at least 2009 through March 2013, in addition to being a Trustee, Bakie was the CFO of AIMS.

31.     Fallis was a Trustee from 2001 to September 10, 2014.

32.     Barton was a Trustee from 2011 to 2013.  Barton was appointed as a Trustee by the Association, acting through DeWalt.

33.     While serving as Trustees during relevant times between 2009 and 2014, DeWalt, Bakie, Fallis, and Barton each exercised discretionary authority or

Complaint - 12

discretionary control respecting management of the Plans and exercised authority or control respecting management or disposition of the Plans' assets, including but not limited to:  (1) determining the amount of Participating Employers' contributions to the Trust; (2) authorizing the Trust's payment of insurance premiums for the Plans; (3) selecting service providers for the Plans, including AIMS; (4) determining the amounts that the Trust paid to AIMS for administrative services; (5) investing the Plans' assets held in the Trust; (6) determining that the Trust obtained contributions for and maintained reserves for future contingencies; and (7) determining how Trust assets should be used to pay for the Plans' benefits and expenses, including, for example, using the Trust's reserve funds to pay for increased fees to AIMS that were not included in monthly billings to employers. Therefore, DeWalt, Bakie, Fallis, and Barton were fiduciaries of the Plans, within the meaning of ERISA sections 3(21)(i) and (iii), 29 U.S.C. §§ 1002(21)(i) and (iii), and were parties in interest to the Plans, as defined in ERISA section 3(14)(A), 29 U.S.C. § 1002(14)(A).

**AIMS's Relationship to the Association, the Trust, the Trustees, and the Plans**

34.    Starting in 1992 and at all times relevant to this Complaint, the Trust retained AIMS to perform certain administrative services relating to the Plans.  By providing these administrative services to the Plans, AIMS was a party in interest,

Complaint - 13

as defined in ERISA section 3(14)(B), 29 U.S.C. § 1002(14)(B), in relation to the Plans.

35.    In addition to being a Trustee and the President and CEO of the Association, DeWalt was an employee and the President of AIMS.  DeWalt thereby was a party in interest, as defined in ERISA section 3(14)(H), 29 U.S.C. § 1002(14)(H), of the Plans.

36.    At times relevant to this Complaint, in addition to being a Trustee and chief financial officer of the Association, Bakie was an employee and the chief financial officer of AIMS.  Bakie thereby was a party in interest of the Plans, as defined in ERISA section 3(14)(H), 29 U.S.C. § 1002(14)(H).

37.    At all times relevant to this Complaint, the Association was the sole owner of AIMS.  The Association had no employees and AIMS employees performed most of the Association's work.

## ERISA VIOLATIONS

### The Trustees' Payment of Fees to AIMS

38.    In its original agreement with AIMS in 1992, the Trust agreed to pay AIMS a fee based upon a specific dollar amount per employee per month for administrative services.  By 2009, however, the Trust's fee agreement with AIMS changed to a fee calculated as a percentage of the total insurance premiums paid through the Trust.  In 2009, AIMS's fee was 2% of premiums.  The monthly bills

Complaint - 14

sent to each Participating Employer for its total contribution to the Trust included the 2% fee for AIMS, but it was not separately itemized.

### First Fee Increase

39.     By signing a motion to accept a fee increase, dated December 31, 2009, Trustees DeWalt, Bakie, and Fallis purported to raise AIMS's fees from 2% of premiums to 3.5% of premiums.  Thereafter, the bills sent to Participating Employers continued to include a 2% fee for AIMS.  The Trustees caused the Trust to pay the fee increase (1.5% of premiums) to AIMS via lump sum payments at various times from the Trust's reserves, commencing June 28, 2010.

40.     As employees and officers of AIMS and as officers of the Association, DeWalt and Bakie had an interest in the amount of fees AIMS received from the Trust because AIMS employed DeWalt and Bakie and paid their compensation.  In 2009, fees received from the Trust were approximately 49% of AIMS's total revenues.  In 2010, fees from the Trust were approximately 40% of AIMS's total revenues.  By retaining and paying AIMS, and acting to increase AIMS's fees from 2% to 3.5% of premiums and causing AIMS to be paid based on the increased fee percentage, DeWalt and Bakie dealt with the assets of the Plans in their own interest.

41.     By retaining and paying AIMS, acting to increase AIMS's fees from 2% to 3.5% of premiums, and causing AIMS to be paid based on the increased fee

Complaint - 15

percentage, DeWalt and Bakie acted in transactions involving the Plans on behalf of a party (AIMS) whose interest was adverse to the interests of the Plans and their participants and beneficiaries, whose interest was having the Trust pay lower fees for AIMS's services.

42.    DeWalt, Bakie, and Fallis caused the increase of AIMS's fees from 2% to 3.5% in violation of the Trust Agreement because the requisite number of Trustees did not approve the increase.  DeWalt, Bakie, and Fallis therefore failed to act in accordance with the documents and instruments governing the Plans, and they caused AIMS to receive payments based upon a fee increase that violated the Trust Agreement's provisions.

43.    DeWalt, Bakie, and Fallis retained and paid AIMS, increased AIMS's fees from 2% to 3.5%, and caused AIMS to be paid based on the higher fee percentage, without:  engaging in any investigation to determine whether the increased fee percentage or the amounts to be paid to AIMS were reasonable; engaging in any investigation to determine whether there were other providers who could provide the services at a lower cost; issuing a RFP or engaging in any bid process for the services AIMS provided; seeking advice from a consultant or other expert about the reasonableness of AIMS's fees or alternative providers who could provide the services at a lower cost to the Trust.

Complaint - 16

44.    Following the increase in AIMS's fees to 3.5% of premiums, the monthly bills sent to Participating Employers for their contributions continued to include only a 2% fee for AIMS.  To pay AIMS the increased 3.5% fee, Trustees DeWalt and Bakie caused money to be taken from the Plans' reserve funds in the Trust, which were amounts employers and employees had contributed to maintain a fund for "future contingencies," not to pay AIMS the fees that were in excess of the 2% included in their monthly contributions.  Fallis knew that DeWalt and Bakie caused the money to be taken from the Trust's reserve funds, and he did not make reasonable efforts to prevent it.

45.    The Trustees did not disclose to Participating Employers or their employees that the Trustees had increased AIMS's fees, that the Participating Employers' monthly contributions did not cover the increased fees, or that DeWalt and Bakie authorized taking money from the Trust's reserves to pay AIMS's increased fees.

**Second Fee Increase**

46.    Trustees DeWalt, Bakie, and Fallis increased AIMS's fees again—this time from 3.5% of premiums to 4% of premiums—by signing an "Associated Employers Health and Welfare Trust Resolution" dated December 30, 2010. Although the resolution did not purport to apply retroactively, the Trustees applied

Complaint - 17

it retroactively, causing the Trust to make payments to AIMS, after the date of the resolution, as if the increased 4% fee were retroactive to January 1, 2010.

47.     As employees and officers of AIMS and as officers of the Association, DeWalt and Bakie had an interest in the amount of fees AIMS received from the Trust.  In 2010, fees received from the Trust were approximately 40% of AIMS's total revenues, and in 2011, fees from the Trust were approximately 38% of AIMS's total revenues.  By retaining and paying AIMS, acting to increase AIMS's fees from 3.5% to 4% of premiums, and causing AIMS to be paid based on the increased fee percentage, DeWalt and Bakie dealt with the assets of the Plans in their own interest.

48.     By retaining and paying AIMS, acting to increase AIMS's fees from 3.5% to 4% of premiums, and causing AIMS to be paid based on the increased fee percentage, DeWalt and Bakie acted in transactions involving the Plans on behalf of a party (AIMS) whose interest was adverse to the interests of the Plans and their participants and beneficiaries, whose interest was having the Trust pay lower fees for AIMS's services.

49.     DeWalt, Bakie, and Fallis also increased AIMS's fees from 3.5% to 4% in violation of the Trust Agreement because the requisite number of Trustees did not approve the increase, in violation of the Trust Agreement.  DeWalt, Bakie, and Fallis therefore failed to act in accordance with the documents and instruments

Complaint - 18

governing the Plans, and they caused AIMS to receive payments based upon an approval that violated the Trust Agreement's provisions.

50.     DeWalt, Bakie, and Fallis increased AIMS's fees from 3.5% to 4% and caused AIMS to be paid based on the higher fee percentage, without: engaging in any investigation to determine whether the increased fee percentage or the amounts to be paid to AIMS were reasonable; engaging in any investigation to determine whether there were other providers who could provide the services at a lower cost; issuing a RFP or engaging in any bid process for the services AIMS provided; seeking advice from a consultant or other expert about the reasonableness of AIMS's fees or alternative providers who could provide the services at a lower cost.

51.     Following the increase in AIMS's fees to 4% of premiums, the monthly bills sent to Participating Employers for their contributions to the Trust continued to include only a 2% fee for AIMS.  To pay AIMS the increased 4% fee, Trustees DeWalt and Bakie caused money to be taken from the Plans'  reserve funds in the Trust to pay AIMS the fees that were in excess of the 2% included in the monthly bills.  Fallis knew that DeWalt and Bakie caused the money to be taken from the Trust's reserves, and he did not make reasonable efforts to prevent it.

Complaint - 19

52.     The Trustees did not disclose to Participating Employers or their employees that the Trustees had increased AIMS's fees, that the Participating Employers' monthly bills and contributions did not cover the increased fees, or that DeWalt and Bakie authorized taking money from the Trust's reserves to pay the increased fees.

### Third and Fourth Fee Increases

53.     Trustees DeWalt, Bakie, and Fallis signed an "Associated Employers Health and Welfare Trust Resolution" dated December 31, 2011, by which they purported to increase AIMS's fee to 5¼ % for up to three years, retroactive to July 1, 2011.  However, in another "Associated Employers Health and Welfare Trust Resolution," *dated the same day, December 31, 2011*, Trustees DeWalt, Bakie, Fallis, and Barton approved an increase of AIMS's fees to 7% of premiums for up to three years, retroactive to January 1, 2011.  Thereafter, the Trust made payments to AIMS *based upon the increased 7% fee*, applied retroactively to January 1, 2011, through at least the year 2014.

54.     As employees and officers of AIMS and as officers of the Association, DeWalt and Bakie had an interest in the amount of fees AIMS received from the Trust.  In 2010, fees received from the Trust were approximately 40% of AIMS's total revenues.  In 2011, fees from the Trust were approximately 38% of AIMS's total revenues.  In 2012, fees from the Trust again were

Complaint - 20

approximately 38% of AIMS's total revenues.  By 2013, fees from the Trust were approximately 50% of AIMS's total revenues.  By retaining and paying AIMS and acting to increase AIMS's fees from 4% to 7% of premiums and causing AIMS to be paid based on the increased fee percentage, DeWalt and Bakie dealt with the assets of the Plans in their own interest.

55.    By retaining and paying AIMS and acting to increase AIMS's fees from 4% to 7% of premiums and causing AIMS to be paid based on the increased fee percentage, DeWalt and Bakie acted in transactions involving the Plans on behalf of a party (AIMS) whose interest was adverse to the interests of the Plans and their participants and beneficiaries, whose interest was having the Trust pay lower fees for AIMS's services.

56.    DeWalt, Bakie, Fallis, and Barton increased AIMS's fees to 7% of premiums and caused AIMS to be paid based on the higher fee percentage, without:  engaging in any investigation to determine whether the increased fee percentage or the amounts to be paid to AIMS were reasonable; engaging in any investigation to determine whether there were other providers who could provide the services at a lower cost; issuing a RFP or engaging in any bid process for the services AIMS provided; seeking advice from a consultant or other expert about the reasonableness of AIMS's fees or alternative providers who could provide the services at a lower cost

Complaint - 21

57.     Following the December 2011 increase in AIMS's fees to 7% of premiums until 2013, the monthly bills sent to Participating Employers for their contributions to the Trust continued to include only a 2% fee for AIMS.  Starting in 2013, the monthly bills sent to Participating Employers for their premium payments to the Trust included a 4% fee for AIMS, although the bills did not itemize AIMS's fees or the amount of the increase.  To pay AIMS the difference between the amounts included in the monthly premium bills (2% or 4%) and the increased 7% fee, Trustees DeWalt and Bakie caused money to be taken from the Trust's reserve funds.  Fallis and Barton knew that DeWalt and Bakie caused the money to be taken from the Trust's reserves, and Fallis and Barton did not make reasonable efforts to prevent it.

58.     The Trustees did not disclose to Participating Employers or their employees that the Trustees had increased AIMS's fees, that the Participating Employers' monthly contributions did not cover the increased fees, or that DeWalt and Bakie authorized the use of money from the Trust's reserves to pay the increased AIMS fees.

**Total Increased Payments to AIMS**

59.     From June 28, 2010, through February 2014, as a result of the Trustees' approvals of fee increases to AIMS and payments made pursuant to those approvals, the Trust paid AIMS over $3 million more for AIMS's services than

Complaint - 22

AIMS would have received if the Trustees had not increased AIMS's 2% (of premiums) fee rate.

60.    From June 28, 2010, through February 2014, DeWalt and/or Bakie caused the Trust to pay, from the Trust's reserves, approximately $2,578,136 to AIMS for administrative fees.  In 2014, DeWalt caused the Trust to transfer a bond, valued at $70,341, directly from a Trust account to AIMS as payment on administrative fees accrued by AIMS.

61.    Making the payments to AIMS from the Trust's reserve funds allowed the Trustees to conceal the increased payments to AIMS and to pay AIMS increased fees without corresponding increases in the Participating Employers' monthly contributions.  Each of the Trustees, during the periods they served as Trustee, knew that payments to AIMS were made from the Trust's reserve funds. The Trustees did not disclose to Participating Employers or their employees that AIMS's fees had been increased, that their monthly contributions did not cover the increased fees, or that payments to AIMS were made from the Trust's reserves.

62.    With respect to the Trustees approvals of the first, second, and fourth fee increase, which increased AIMS's fees progressively from 2% to 3.5% to 4% to 7% of premiums, respectively, in a two-year period, the payments made pursuant to those approvals, the removal of money from the Trust's reserves to pay AIMS, and the failures to disclose material facts to the Participating Employers and their

Complaint - 23

employees about the payments to AIMS, Defendants DeWalt, Bakie, Fallis, and Barton, acting as Trustees, each:

a.  participated knowingly in the acts or omissions of another fiduciary, knowing such action was a breach of fiduciary duty;

b.  by his failure to comply with his own fiduciary duties, enabled another fiduciary to commit a breach of fiduciary duty; and

c.  had knowledge of a fiduciary breach by another fiduciary, and failed to make reasonable efforts under the circumstances to remedy the breach.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duties By DeWalt, Bakie, Fallis, Barton, and the Association)

63.     The Secretary hereby incorporates by reference the allegations of paragraphs 1 through 62 as if set forth anew.

64.     By their actions, omissions and failures described above, DeWalt, Bakie, Fallis, and Barton:

(a) failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

Complaint - 24

(b)  failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

(c) caused the Plans, through the Trust, to engage in transactions with AIMS, when they knew or should have known that such transactions constituted the furnishing of services between the Plans and AIMS, a party in interest, in violation of ERISA section 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C); and

(d) caused the Plans, through the Trust, to engage in transactions that they knew or should have known constituted transfers of Plans' assets to, or for the benefit of AIMS, a party in interest, in violation of ERISA section 406(a)(1)(D); 29 U.S.C. § 1106(a)(1)(D).

65.    By the actions, omissions and failures described above, DeWalt, Bakie, and Fallis failed to act in accordance with the documents and instruments governing the Plans insofar as such documents and instruments are consistent with ERISA, in violation of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

66.    Furthermore, under ERISA section 405(a)(1), (2), and (3), 29 U.S.C. § 1105(a)(1),(2), and (3), DeWalt, Bakie, Fallis, and Barton, during the time each

Complaint - 25

served as a Trustee, are each liable for the fiduciary breaches by the others because each:

> (a) knowingly participated in or concealed acts or omissions of the other, knowing that such acts or omissions were fiduciary breaches;

> (b) enabled the other fiduciaries to commit fiduciary breaches through their own fiduciary breaches of ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1); and

> (c) had knowledge of the other's fiduciary breaches and did not make reasonable efforts under the circumstances to remedy those breaches.

67.    The Association, which had authority to appoint and remove Trustees, failed to properly monitor their actions.  By failing to monitor the Trustees' actions, and by other acts set forth herein, the Association:

> (a) failed to discharge its duties with respect to the Plans solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

> (b) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an

Complaint - 26

enterprise of a like character and with like aims, in violation of

ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

(c) is liable for the fiduciary breaches of the Trustees under ERISA

section 405(a)(1), (2), and (3), 29 U.S.C. § 1105(a)(1). (2), and (3),

because it:

i.      knowingly participated in or concealed the acts or omissions of

the Trustees, knowing that such acts or omissions were

breaches;

ii.      enabled the Trustees  to commit breaches, by breaching its own

fiduciary duties under ERISA section 404(a)(1), 29 U.S.C.

§ 1104(a)(1); and

iii.      had knowledge of the fiduciary breaches of the Trustees and did

not make reasonable efforts under the circumstances to remedy

them.

68.      As a result of their fiduciary breaches and actions described herein,

DeWalt, Bakie, Fallis, Barton, and the Association caused the Plans to suffer

financial losses for which they are jointly and severally liable pursuant to ERISA

section 409(a), 29 U.S.C. § 1109(a).

Complaint - 27

## SECOND CLAIM FOR RELIEF
### (Prohibited Self-Dealing by DeWalt and Bakie)

69.     The Secretary hereby incorporates by reference the allegations of paragraphs 1 through 68 as if set forth anew.

70.     By retaining and paying AIMS, approving the increases in AIMS's fees, authorizing the Trust's fee payments remitted to AIMS, causing the Trust to pay AIMS from the reserve funds held by the Trust, and other acts set forth herein, DeWalt and Bakie:

(a) dealt with assets of the Plans in their own interest or for their own account, in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1); and

(b) acted in transactions involving the Plans on behalf of a party (AIMS), which had interests adverse to the Plans or the interests of participants or beneficiary of the Plans, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2).

71.     As a result of their fiduciary self-dealing in violation of ERISA sections 406(b)(1) and (2), 29 U.S.C. §§ 116(b)(1) and (2), DeWalt and Bakie caused the Plans to suffer financial losses for which DeWalt and Bakie are jointly and severally liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

Complaint - 28

## THIRD CLAIM FOR RELIEF
### (AIMS's Knowing Participation in Fiduciary Breaches)

72.    The Secretary hereby incorporates the allegations of paragraphs 1 through 71 as if set forth anew herein.

73.    AIMS knew the facts and circumstances of the Trustees' and the Association's fiduciary breaches described herein.  AIMS knowingly participated in the Trustees' breaches of fiduciary duty by receiving the increases in its fee payments from the Trust, participating in and assisting the Trustees in withholding from the Trust's Participating Employers and employees information about the increases in AIMS's fees, sending monthly premium statements to Participating Employers without including the full amount of AIMS's fees, and receiving payments from reserve funds held by the Trust for those increased fees.  AIMS thereby knowingly participated in the Trustees' ERISA violations and under ERISA section 502(a)(5), 29 U.S.C. § 1132(a)(5), is liable for appropriate equitable relief to redress its knowing participation in the Trustees' ERISA violations.


*<The remainder of page intentionally left blank.>*

Complaint - 29

## **PRAYER FOR RELIEF**

WHEREFORE, the Secretary prays that this Court enter a final order (a)

holding DeWalt, Bakie, Fallis, Barton, and the Association jointly and severally

liable to restore to the Trust all losses suffered as a result of the ERISA violations

describe herein, plus prejudgment interest and post judgment interest; (b) requiring

AIMS to disgorge its fees received as a result of its knowing participation in the

ERISA breaches described herein, plus prejudgment and post judgment interest; (c)

enjoining DeWalt, Bakie, Fallis, and Barton from acting as fiduciaries or service

providers to any ERISA-covered employee benefit plan; (d) appointing an

Independent Fiduciary to hire and determine the compensation for the Trust's

*&lt;The remainder of page intentionally left blank.&gt;*

Complaint - 30

service providers; (e) compelling an accounting of the Trust's assets; and (f)

providing for such other relief as may be equitable, just, and proper.


Dated:  February 24, 2017          Respectfully submitted,

                                   Nicholas C. Geale
                                   Acting Solicitor of Labor

                                   G. William Scott
                                   Associate Solicitor
                                   Plan Benefit Security Division

                                   Robert L. Furst
                                   Counsel for Litigation
                                   Plan Benefit Security Division


                                    *s/ Peter B.Dolan*_____
                                   Peter B. Dolan
                                   Senior Trial Attorney
                                   Eirik J. Cheverud
                                   Trial Attorney
                                   Marc Sarata
                                   Trial Attorney
                                   Plan Benefits Security Division
                                   U.S. Department of Labor
                                   Office of the Solicitor
                                   P.O. Box 1914
                                   Washington, D.C.  20013
                                   Telephone:   (202) 693-5612
                                   Facsimile:    (202) 693-5610

Complaint - 31